# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARLON GOODWIN,      )
                               )
         Plaintiff, pro se,    )
                               )  **MEMORANDUM OPINION**
       v.                     )  **AND RECOMMENDATION**
                               )
BRIAN BEASLEY, et al.,      )           1:09CV151
                               )
         Defendants.     )

       This matter is before the court on two separate motions by various Defendants. Defendant Assistant District Attorney Beasley has filed a motion to dismiss (docket no. 15). Also, Defendants Sheriff B.J. Barnes, Officer Karen Carter, Sergeant Wood, Captain Reid, and Booking Officer John Doe have filed a separate motion to dismiss (docket no. 25).[1] Plaintiff has filed his opposition to both motions, and, in this posture, these matters are ripe for disposition. Furthermore, because the parties have not consented to the jurisdiction of the magistrate judge, the motions must be dealt with by recommendation. For the following reasons, it will be recommended that the court grant Defendant Beasley's motion to dismiss, grant the motion to dismiss the official capacity claims against Defendants Carter, Reid, Wood, and Doe, grant the motion to dismiss the individual capacity claims against

---

[1] Although Plaintiff's amended complaint names Sheriff *Billy* Barnes, Officer *Kim* Carter, and Sergeant *Woods* as defendants, these Defendants assert that their correct names are Sheriff *B.J.* Barnes, Officer *Karen* Carter, and Sergeant *Wood* in their Answer (docket no. 17). The court will refer to these parties using the corrected names.

Defendants Barnes, Reid, and Doe, and deny the motion to dismiss the individual capacity claims against Defendants Carter and Wood (docket no. 25).

## BACKGROUND

Plaintiff filed this pro se 42 U.S.C. § 1983 complaint based on an incident that occurred while he was a pre-trial detainee in the Guilford County Jail. Plaintiff named as Defendants Assistant District Attorney Brian Beasley, Sheriff B.J. Barnes, Officer Karen Carter, Sergeant Wood, Nurse Dee Everett, Robin Worth, Jail Captain Reid, and Booking Officer John Doe in both their official and individual capacities.[2] Assistant District Attorney Beasley was the prosecutor for Plaintiff's ongoing criminal case. Robin Worth was a witness for the prosecution in Plaintiff's criminal case. Worth was transferred to Guilford County Jail on March 15, 2006, in order to testify at the approaching criminal trial. Officer Carter, Sergeant Wood, Booking Officer Doe, and Nurse Everett are all employed at Guilford County Jail. Captain Reid is the jail's captain, and Sheriff Barnes is the Guilford County Sheriff. Plaintiff alleges that Defendants violated his Fifth, Eighth, and Fourteenth Amendment constitutional rights arising out of an incident in which Defendant Worth attacked and injured Plaintiff within the jail on March 15, 2006.

---

[2] Here, because not all Defendants have joined in the various motions to dismiss, the court recites only the facts alleged as to the moving Defendants Beasley, Barnes, Carter, Wood, Reid, and Doe.

2

Defendant Beasley filed a motion to dismiss on June 16, 2009, challenging Plaintiff's claim against him on the bases of failure to state a claim and lack of subject matter jurisdiction. Defendant Beasley supports the latter ground based on the Eleventh Amendment and claims of absolute and qualified immunity. On July 7, 2009, Plaintiff filed his response in opposition to Defendant Beasley's motion to dismiss. Defendants Sheriff Barnes, Officer Carter, Sergeant Wood, Captain Reid, and Booking Officer Doe filed a motion to dismiss on July 22, 2009. The motion to dismiss challenges Plaintiff's allegations against them on a number of grounds, including failure to state a claim and qualified immunity. In addition, Booking Officer Doe asserts insufficient process, insufficient service of process, and lack of personal jurisdiction as grounds for dismissal. Lastly, the moving Defendants challenge the official capacity claims against Officer Carter, Sergeant Wood, Captain Reid, and Booking Officer Doe as redundant in light of the official capacity claim against Sheriff Barnes. Plaintiff filed his response in opposition to this motion on August 18, 2009.

**PLAINTIFF'S ALLEGATIONS**

For purposes of the pending motion, the allegations in Plaintiff's complaint are taken as true. Plaintiff's allegations arise out of an incident in the Guilford County jail in which co-inmate Robin Worth attacked and injured Plaintiff on March 15, 2006. Plaintiff alleges that on March 15, 2006, Defendant Beasley transferred Worth to the Guilford County Jail in order to have Worth testify for the prosecution at Plaintiff's upcoming capital murder trial. (Am. Compl. p. 5.) Plaintiff alleges that Defendant

Beasley failed to inform jail officials of the reason for Worth's transfer, and that a "keep separate" order should have been issued to prevent Worth from coming into contact with Plaintiff or his criminal trial co-defendant. (*Id.*)

Plaintiff also alleges that on March 15, 2006, Defendant Booking Officer John Doe failed to properly screen Worth as an incoming detainee upon his arrival to the Guilford County Jail. (*Id.* pp. 6, 14.) Plaintiff asserts that Doe did not follow the basic booking procedures. (*Id.*) Specifically, Plaintiff asserts that Doe should have screened Worth for potential problems with current detainees. (*Id.* p. 6.) Plaintiff also asserts that Doe should have examined Worth's paperwork and the court docket. (*Id.* pp. 7, 14.) From an examination of the docket, Plaintiff asserts that Doe should have been able to discern that Worth was scheduled to be a witness against Plaintiff and his co-defendants in an upcoming criminal trial. (*Id.* p. 15.) Doe assigned Worth to the fourth floor, the same floor on which Plaintiff was housed, without issuing any "keep separate" orders. (*Id.* p. 6.)

Plaintiff alleges that about five hours before Worth attacked him, Plaintiff warned Officer Carter that it may be unsafe for him and Worth to be kept on the same floor. (*Id.* p. 11.) Plaintiff alleges that he told Officer Carter about his upcoming criminal trial and that Worth was scheduled to be a witness for the prosecution. (*Id.*) Plaintiff alleges that Officer Carter told him that she relayed the concern to Sergeant Wood and was told that there was no threat to Plaintiff's safety so long as he and Worth were not in the same tier. (*Id.*) Plaintiff alleges that

Sergeant Wood did not check to see if Worth was in fact scheduled to testify for the prosecution in the upcoming criminal trial and that he did not issue a "keep separate" order. (*Id.* p. 12.) Plaintiff further alleges that on the day of the attack Officer Carter failed to ensure that Worth was locked down properly. (*Id.* p. 10.) Officer Carter ordered Worth to lock down numerous times, but instead of locking down, Worth hid behind a concrete pillar. (*Id.* p. 7.) Plaintiff alleges that Officer Carter failed to follow standard lock-down procedures, including checking Worth's cell to ensure that he had followed her lock-down orders. (*Id.* p. 11.)

Plaintiff alleges that on the day of the attack, he was discussing his upcoming criminal trial with his attorney in an attorney's booth on the fourth floor of the Guilford County Jail, when Worth entered the attorney's booth and violently attacked him. (*Id.* p. 9.) Worth first attempted to grab Plaintiff's pen, and then proceeded to physically attack Plaintiff. (*Id.*) Plaintiff alleges that Worth punched him, kicked him, and rammed his head into a cement wall and a steel door frame. (*Id.*) Plaintiff alleges that the attack lasted between four and five minutes and that he was unable to escape because he was locked in the attorney's booth. (*Id.*) Plaintiff claims Worth attacked him because Defendant Beasley told Worth that Plaintiff had shot and killed Alicia Herndon, believing that he was shooting at Worth. (*Id.*) Plaintiff suffered numerous injuries from the attack, including blunt force trauma to the head, a swollen eye, several cuts above the left eye, a series of "knots" on the face and

forehead, and severe headaches. (*Id.*) Plaintiff alleges that he has a permanent imprint of Worth's knuckles on the left side of his forehead. (*Id.*)

Plaintiff alleges that Officer Carter stood by and did not intervene when Worth attacked Plaintiff. (*Id.* p. 11.) Plaintiff alleges that it is Officer Carter's duty to intervene immediately but that her personal beliefs precluded her from doing so. (*Id.*) Plaintiff alleges that Officer Carter's personal beliefs are evinced by her later statements: "Robin Worth was huge" and "[Plaintiff] would not have to worry about getting jumped on if [Plaintiff] was not out there shooting up women." (*Id.*) Although she did not physically intervene, Officer Carter requested the aid of more officers in order to stop the attack. Plaintiff alleges that the attack continued until Sergeant Wood and his team arrived "at least five minutes after the assault began." (*Id.* p. 12.) Upon arriving, Plaintiff alleges that Sergeant Wood and his officers grabbed Plaintiff rather than Worth, despite Plaintiff's visible injuries. (*Id.*) Plaintiff alleges that Sergeant Wood intentionally took a long time to respond because Plaintiff had filed two previous grievances against him, as evinced by Sergeant Wood's statement to Plaintiff after breaking up the attack, "It's about time someone got a hold of you." (*Id.*)

Plaintiff alleges that he sent Captain Reid many grievance requests regarding his injuries. (*Id.* p. 17.) Plaintiff also alleges that Rev. Amerson, the jailhouse preacher, and Rev. Amerson's wife both spoke to Captain Reid about Plaintiff's headaches. (*Id.*) Plaintiff alleges that Captain Reid never responded to any of these

inquiries. (*Id.*) Plaintiff also alleges that on March 18, 2006, he sent Captain Reid a grievance request form inquiring as to why Worth was housed on the same floor as he, why Worth was not properly locked down, and why no one issued a "keep separate" order. (*Id.*) On March 19, 2006, Plaintiff received a response from Captain Reid's office, stating: "We had no knowledge Robin Worth was a state witness in your case, but now we do and it has been documented." (*Id.*) Plaintiff alleges that he also asked Captain Reid for the name of the Booking Officer on March 15, 2006, but that his request was denied. (*Id.*) Finally, Plaintiff alleges that he complained about the insufficient medical treatment that he was receiving. (*Id.*) Captain Reid referred the complaints to the medical staff and never personally responded. (*Id.*)

Plaintiff seeks $1,800,000 in compensatory damages for physical injuries, violations of his constitutional rights, and mental and emotional pain and suffering. In addition, Plaintiff seeks punitive damages in the amount of $1,100,000 for the violations of his constitutional rights.

**MOTION TO DISMISS STANDARD**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are

7

liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

## DISCUSSION

### Plaintiff's Deliberate Indifference Claims

Section 1983, the statute under which Plaintiff brings his claims, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). Thus, the initial inquiry in any Section 1983 suit is to determine the underlying federal right that has been allegedly violated. *Id.* at 394; *see also Parratt v. Taylor*, 451 U.S. 527, 536 (1981) (stating that the inquiry must turn to whether a plaintiff has been deprived of any right, privilege, or immunity under the Constitution or laws of the United States), *overruled on other grounds by Daniels*

*v. Williams*, 474 U.S. 327 (1986)*.*  Here, the complaint purports to allege claims arising under the Fifth, Eighth, and Fourteenth Amendments.  The amended complaint makes clear, however, that at the time of the incident, Plaintiff was a pre-trial detainee.  Given Plaintiff's status as a pre-trial detainee, the Fifth and Eighth Amendments are not implicated.  Rather, for pretrial detainees such as Plaintiff, the standard of care is governed by the due process clause of the Fourteenth Amendment.[3]  *See Graham*, 490 U.S. at 394, 395 n.10; *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979); *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir. 1990).  Thus, I will determine whether Plaintiff has sufficiently alleged a Fourteenth Amendment violation.

The Fourteenth Amendment right of pre-trial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to "a substantial risk of serious harm to an inmate."  *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (applying the Eighth Amendment).  Deliberate indifference claims have both an objective and a subjective component.  *Id.* at 834.  The first, objective prong requires a plaintiff to prove that a defendant's action or inaction resulted in or created a significant risk of harm.  *Id.*  The subjective prong requires a plaintiff to prove that a defendant was "aware of facts from which

---

[3]  The Eighth Amendment is understood to come into play only after a citizen has been convicted and is confined by the lawful authority of that conviction.  As a practical matter, however, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's Section 1983 claim.  *See Hill v. Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992).

9

the inference could be drawn that a substantial risk of harm exist[ed] and [that the defendant drew] the inference." *Id.* at 837. Deliberate indifference is a high standard, requiring more than a showing of mere negligence. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

**Plaintiff's Claim against Assistant District Attorney Beasley**

In the amended complaint, Plaintiff alleges that Defendant Assistant District Attorney Beasley "negligently jeopardized my safety and violated my constitutional rights by failing to perform his duties, by not alerting the proper officials at the Guilford County [jail] that one of the states' witnesses 'Robin Worth' was scheduled to give testimony for the state against one of my codefendant[s] in a capital murder case and that this particular witness . . . should not have any contact with any of the defendants whom his testimony was against . . . ." (Am. Compl. p. 5.) For the following reasons, Defendant Beasley should be dismissed as a Defendant. First, this court lacks subject matter jurisdiction because Eleventh Amendment sovereign immunity bars a lawsuit against Defendant Beasley in his official capacity. *See Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006). Next, to the extent that Plaintiff is contending that Defendant Beasley had any control over jail conditions, Plaintiff fails to state a claim against Beasley since the sheriff, not a local prosecutor, has the authority for running the jail. *See Parker v. Bladen County*, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008).

10

Finally, to the extent that Plaintiff's claim is based on an allegation that Defendant Beasley had Worth transferred to the jail where Plaintiff was housed, the complaint should also be dismissed as to Defendant Beasley based on prosecutorial immunity. Plaintiff contends in his response brief that he is not alleging that Defendant Beasley was responsible for running the jail where Plaintiff was housed. He appears to be asserting, instead, that Defendant Beasley had Worth transferred to the jail where Plaintiff was housed, all the while knowing that Worth was a physical threat to Plaintiff. Prosecutors are "entitled to absolute immunity for activities 'intimately associated with the judicial phase of the criminal process.'" *Pippen v. Scales*, 822 F. Supp. 305, 309 (M.D.N.C. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In *Imbler v. Pachtman*, the Supreme Court described the scope of prosecutors' absolute immunity as limited to those activities involved in "initiating a prosecution and in presenting the State's case." 424 U.S. at 431. The Court did not address whether absolute immunity extended to the prosecutor's administrative or investigative functions. To determine whether particular activities are protected by absolute or qualified immunity, courts focus on the "nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Under this test, a prosecutor has absolute immunity for his activities as an advocate and qualified immunity for his administrative and investigative activities.

11

The transfer of a prisoner from one facility to another is normally a routine administrative act. *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 160 (S.D.N.Y. 2007) (holding that the transfer of a prisoner was an administrative act when it was not done for the purpose of effectuating prosecution or sentencing). Certain circumstances, however, change the nature of a prisoner transfer from an administrative act to a prosecutorial act. In *Pinaud v. County of Suffolk*, 798 F. Supp. 913, 920 (E.D.N.Y. 1992), the court held that a prosecutor's transfer of a prisoner was part of the initiation of the prosecution because the prisoner's presence was required for the prosecution to proceed with its case. Here, to the extent that Plaintiff is alleging that Defendant Beasley had Worth transferred to the Guilford County Jail for the purpose of testifying in Plaintiff's trial, the decision to transfer Worth was a prosecutorial act. Therefore, Defendant Beasley is protected by absolute immunity for any claims arising out of this act. For the foregoing reasons, Defendant Beasley's motion to dismiss should be granted.[4]

**Plaintiff's Claim against Defendants Officer Carter, Sergeant Wood, John Doe, and Captain Reid in Their Official Capacities**

As a preliminary matter, the court notes that Plaintiff has filed official capacity claims against Sheriff Barnes, Officer Carter, Sergeant Wood, Captain Reid, and Booking Officer Doe. As Defendants correctly point out, such claims "generally

---

[4] In light of Defendant Beasley's Eleventh Amendment immunity, absolute immunity, and dismissal based on failure to state a claim, it is unnecessary to consider his motion to dismiss on the basis of qualified immunity.

represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Here, such entity is the Office of Sheriff of Guilford County, and Barnes has been sued in his official capacity as Sheriff.  *Gantt v. Whitaker*, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002), *aff'd*, 57 Fed. Appx. 141 (4th Cir. 2003).  Thus, Plaintiff's official capacity claims against Officer Carter, Sergeant Wood, Captain Reid, and Booking Officer Doe are redundant and must be dismissed.[5]  *Id.  See also Ramsey v. Schauble*, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001).

**Plaintiff's Claim against Defendant John Doe in His Individual Capacity**

As for the unidentified Defendant, Booking Officer Doe, the Fourth Circuit has allowed "John Doe" claims if it appears that the true identities of the unnamed parties can be ascertained through discovery or through intervention of the court.  *Schiff v. Kennedy*, 691 F.2d 196, 197-98 (4th Cir. 1982) (in a wiretapping case, where the plaintiff alleged that an unidentified John Doe defendant helped the plaintiff's former wife place a tap on the family telephone, the court vacated the district court's

---

[5]  As to the claim against Defendant Sheriff Barnes in his official capacity, Defendants have not moved to dismiss based on an argument that Plaintiff has failed to allege that his injuries arose from policy-making by Defendant Barnes.  Indeed, Plaintiff alleges that Barnes–as the official policy maker for the Sheriff's office–failed to adequately train and supervise the employees working at the jail.  Thus, it appears that the claim against Defendant Barnes in his official capacity as Sheriff remains.  *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

dismissal of the John Doe defendant and remanded for further proceedings). Furthermore, a John Doe's involvement in the alleged wrongful conduct must be clear from the complaint in order for the claim to be permissible. *Waller v. Butkovich*, 584 F. Supp. 909, 920 n.1 (M.D.N.C. 1984) (dismissing claims against "John Doe" defendants where their involvement in the alleged wrongful conduct was not clear from the complaint). Both requirements are met in this case. First, Plaintiff identified the John Doe's specific employment position at the Guilford County Jail and a specific date on which the individual was serving in that position. It is likely that the true identity of the unnamed party can be ascertained through discovery or the intervention of the court given these details. *Cf. Keno v. Doe*, 74 F.R.D. 587 (D.N.J. 1977) (dismissing the complaint as frivolous where the pro se plaintiff's complaint listed the defendant as "John Doe" and did not provide any description sufficient to identify the person involved). Furthermore, the complaint articulates the unidentified John Doe Defendant's role in the alleged constitutional violations against Plaintiff. Specifically, Plaintiff alleges that on March 15, 2006, the Defendant Booking Officer John Doe failed to properly screen Worth during the booking process to determine whether Worth had any "enemies" or "violent tendencies towards anyone housed at the Guilford County Jail." (Am. Compl. p. 6.) Therefore, Defendant Doe's personal jurisdiction argument must be rejected since his alleged wrongful conduct is clear from the complaint.

14

In any event, the claims against Defendant Doe should be dismissed for failure to state a claim, as no inferences can be drawn to make out a deliberate indifference claim against Booking Officer Doe, even taking Plaintiff's allegations as true. Plaintiff does not allege that Booking Officer Doe knew of the risk in housing Worth on the same floor as Plaintiff. To the contrary, Plaintiff's claim is that Booking Officer Doe failed to discover the existence of this risk by not properly screening Worth. (*Id.* p. 14.) None of Plaintiff's allegations can reasonably lead to an inference that Booking Officer Doe knew of the risk of housing Plaintiff and Worth on the same floor. Plaintiff has failed to satisfy the subjective prong of the deliberate indifference test with respect to the individual capacity claim against Booking Officer Doe, and therefore this claim should be dismissed for failure to state a claim.[6]

**Plaintiff's Claim against Defendant Carter in Her Individual Capacity**

I find that Officer Carter's motion to dismiss Plaintiff's claim against her in her individual capacity under 42 U.S.C. § 1983 should be denied. Taking Plaintiff's allegations as true, as the court must, it can be reasonably inferred that Officer Carter acted with deliberate indifference in violation of Plaintiff's Fourteenth Amendment constitutional rights by failing to find alternative housing arrangements for Plaintiff or Worth, as well as by choosing not to intervene in the assault on

---

[6] As the claims against Defendant Booking Officer John Doe in his individual and official capacities should be dismissed, the court need not address the issue of whether the Complaint could be amended to add the true identity of the Booking Officer consistent with FED. R. CIV. P. 15(c)(3).

Plaintiff. Plaintiff alleged that Officer Carter's conduct on May 5, 2006, created a significant risk of harm when she failed to procure alternative housing arrangements and when she failed to properly lock down Worth, providing him an opportunity to assault Plaintiff.

Also, Plaintiff has sufficiently alleged facts to satisfy the subjective prong of a deliberate indifference claim. Specifically, Plaintiff alleged that he warned Officer Carter of the potential danger of housing Worth on the same floor as him. (Am. Compl. p. 11.) Officer Carter inquired to Sergeant Wood about the danger. No alternative arrangements were made and Worth remained on the same floor as Plaintiff. (*Id.*) Only a few hours later, Officer Carter failed to secure Worth during a routine lock-down procedure. (*Id.* p. 10.) Plaintiff also alleges that while the assault was occurring, Officer Carter watched but made no effort to intervene or to otherwise try to stop the attack. According to Plaintiff, Officer Carter later stated that she did not intervene because of Worth's size and that "[Plaintiff] would not have to worry about getting jumped on if [Plaintiff] wasn't out there shooting up women." (*Id.* p. 11.) Thus, it is reasonable to infer that Officer Carter knew that a substantial risk of harm to Plaintiff existed, and that she knew it was dangerous to keep Plaintiff and Worth on the same floor, even though Sergeant Wood said it would be fine. It is also reasonable to infer that Officer Carter knew that it was dangerous and unreasonable not to intervene in the assault, but that she still chose not to intervene.

16

As such, and taking the allegations in the light most favorable to Plaintiff as the court must, Plaintiff has stated a colorable claim against Officer Carter under the Fourteenth Amendment. Plaintiff undoubtedly may face other evidentiary and legal obstacles in proving his claim, but at this stage of the proceeding, considering Plaintiff's pro se status, the case cannot be dismissed on the ground that Plaintiff failed to make out a claim for deliberate indifference. For the foregoing reasons, Officer Carter's motion to dismiss the individual capacity claim against her for failure to state a claim should be denied.

**Plaintiff's Claim against Defendant Wood in His Individual Capacity**

Taking the allegations in the light most favorable to Plaintiff, as the court must, Plaintiff has also stated a colorable claim against Sergeant Wood under 42 U.S.C. § 1983. With respect to the housing arrangement, Plaintiff alleges that Sergeant Wood was aware of the danger posed by keeping Worth on the same floor as the Plaintiff. (Am. Compl. p. 12.) Specifically, Plaintiff has alleged that Officer Carter inquired to Sergeant Wood about this specific danger after Plaintiff warned her. (*Id.* p. 11.) Sergeant Wood decided to keep the Plaintiff and Worth on the same floor but in different tiers. (*Id.*) Plaintiff also alleges that Sergeant Wood took an unreasonably long time, between five and seven minutes, to respond to Worth's attack, and that the response was likewise inappropriate. (*Id.* p. 12.)

From Plaintiff's allegations it is possible to draw an inference that Sergeant Wood either knew that his actions were inappropriate in light of the risk, or else that

17

his actions were so patently inadequate as to justify an inference that he recognized that his actions were inappropriate. Plaintiff's aforementioned allegations concerning Sergeant Wood's response to the altercation between Plaintiff and Worth, including Sergeant Wood's alleged statement, justify such an inference.[4] From these allegations it is reasonable to infer that, in light of the circumstances surrounding the attack and the response, Sergeant Wood must have recognized that his actions were inappropriate. Plaintiff has alleged facts sufficient to satisfy the objective and subjective prongs of the deliberate indifference test when viewed in the light most favorable to him, and therefore Sergeant Wood's motion to dismiss for failure to state a claim should be denied.

Based on the evidence presented by the parties, and construing it in favor of Plaintiff as the court must, the court cannot find that Officer Carter and Sergeant Wood did not act with deliberate indifference in violation of Plaintiff's Fourteenth Amendment constitutional rights as a matter of law.[5] To do so would be to make a credibility determination, which is not permitted at this point in the proceedings. Furthermore, because there are genuine issues of fact as to whether a reasonable officer in Officer Carter or Sergeant Wood's position could conclude that his or her

_____

[4] Defendant points out that Plaintiff has not alleged facts concerning why it took Sergeant Wood so long to respond; however, such facts would be beyond the reach of the Plaintiff at this stage of the litigation. Further facts surrounding this incident can be developed through discovery.

[5] Defendants concede that Plaintiff has a clearly established right under the Fourteenth Amendment to have his safety protected by jail officials. (*See* Defs.' Br., p. 13.)

18

action violated a clearly established constitutional right, Officer Carter and Sergeant Wood are not entitled to qualified immunity at this stage.[6]

**Plaintiff's Claim against Captain Reid in His Individual Capacity**

Plaintiff asserts a supervisor liability claim against Captain Reid for the actions of Booking Officer Doe and Officer Carter on March 15, 2006. The doctrine of respondeat superior generally has no application in Section 1983 cases. *Monell*, 436 U.S. at 693-94; *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). To hold a supervisor liable for a constitutional injury inflicted by a subordinate in Section 1983 actions, the following three elements must be found: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing the existence of a

---

[6] If, in a later proceeding, it is determined that Officer Carter and Sergeant Wood did act with deliberate indifference, the court will then take up the qualified immunity issue again with the facts as found by the jury in mind. That is, the court will determine whether, under the facts as found by the jury, a reasonable officer would have known that his actions violated a constitutional right. *See Willingham v. Crooke,* 412 F.3d 553, 559 (4th Cir. 2005) ("We reject [plaintiff's] contention that our prior decision–holding that [the police officer] was not entitled to summary judgment on the basis of qualified immunity–finally disposed of the qualified immunity defense . . . .").

19

persuasive and unreasonable risk requires evidence that the conduct is widespread "or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

Here, Plaintiff has failed to allege that Captain Reid had either actual or constructive knowledge that any of his subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Plaintiff. There are also no allegations that conduct leading to the risk was widespread or had occurred on any occasion rather than that in issue. In the absence of any allegations establishing this element, the supervisor liability claim against Captain Reid should be dismissed.

Plaintiff also seeks to hold Captain Reid liable for failure to properly address Plaintiff's complaints concerning his medical needs and the medical staff at the Guilford County Jail. The Fourth Circuit addressed the issue of deliberate indifference with respect to a pre-trial detainee's medical needs in *Young v. City of Mount Ranier*. 238 F.3d at 575-76. In *Young*, the court held that deliberate indifference in this context required a showing that the defendants "actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Id.* In support of the claim against Reid, Plaintiff alleges that when he complained to Reid about the medical treatment he was experiencing, Reid responded by referring the

20

matter to the medical staff. Thus, Plaintiff himself has alleged that Captain Reid did not ignore his alleged serious need for medical care, but rather that he received the complaint and referred it to the medical staff, who are much more experienced with such matters and better able to respond. Supervisory jail and prison officials are entitled to rely on the professional judgment of trained jail medical personnel. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). For the foregoing reasons, Plaintiff does not have an actionable claim against Defendant Reid for deliberate indifference to serious medical needs, and, therefore, this claim should be dismissed.[7]

**Plaintiff's Claim against Sheriff Barnes in His Individual Capacity**

As to the claim against Sheriff Barnes in his individual capacity, like Defendant Reid, Plaintiff Barnes may not be held liable under Section 1983 under a theory of respondeat superior. As noted above, however, Sheriff Barnes may be held liable to the extent that an affirmative link exists between his "participation, his exercise of control or direction, or his failure to supervise" and the alleged constitutional deprivation. *See Cranford v. Frick*, No. 1:05cv62, 2007 WL 676687, at *6 (M.D.N.C. Feb. 28, 2007) (quoting *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987)). Here, Plaintiff alleges that Sheriff Barnes failed to "enforce basic policies and

---

[7] Defendants Reid and Doe have also raised the defense of qualified immunity. Since the court finds no constitutional violations by these Defendants in the first instance, there is no need to conduct the second step in the qualified immunity determination–whether a constitutional right was clearly established. *See generally Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (abrogating *Saucier v. Katz,* 533 U.S. 194 (2001), by holding that courts are not required to determine whether a violation of a constitutional right occurred before determining whether the right was clearly established for purposes of qualified immunity).

21

procedures along with not having properly trained deputies or Jailers nor alerting the Jailers or staff . . . to properly screen all incoming detainees" to ensure that there were no incoming inmates who intended to harm fellow inmates. (*See* Am. Compl. p. 6.) Plaintiff further alleges that Sheriff Barnes "fail[ed] to train and enforc[e] jailhouse screening policy and the training of jailer Kim Carter" in lock-down procedures. (*See id.* p. 8.) Keeping in mind that the plaintiff's burden on a motion to dismiss is not onerous, I find that Plaintiff's allegations are sufficient to state a claim for deliberate indifference against Sheriff Barnes in his individual capacity. Therefore, the motion to dismiss by Sheriff Barnes in his individual capacity should be denied.

**CONCLUSION**

For all these reasons, **IT IS RECOMMENDED** that the court **GRANT** Defendant Beasley's Motion to Dismiss (docket no. 15), **GRANT** the Motion to Dismiss the official capacity claims against Defendants Carter, Reid, Wood, and Doe (docket no. 25), **GRANT** the Motion to Dismiss the individual capacity claims against Defendants Barnes, Reid and Doe (docket no. 25), and **DENY** the Motion to Dismiss the individual capacity claims against Defendants Carter and Wood (docket no. 25).

WALLACE W. DIXON
United States Magistrate Judge

June 18, 2010

22